840 F.2d 678
 James W. AUSTIN; Carl E. York, Jr.; Richard F. Lert,
Trustees of the Ariana A. Fairbanks Trust dated April 28,
1978; Robert O. Bullard, Jr.; Carl E. York, Jr., Successor
Trustees of the 1976 Austin Revocable Trust dated December
11, 1976, Plaintiffs-Appellees, Cross-Appellants,
v.
CITY AND COUNTY OF HONOLULU, a municipal corporation,
Defendant-Appellant, Cross-Appellee.
 Nos. 87-1540, 87-1571.
 United States Court of Appeals,
Ninth Circuit.
 Argued Nov. 2, 1987.
Submitted Dec. 3, 1987*.
Decided Feb. 24, 1988.
 
 Jonathan Chun, Deputy Corp. Counsel, Honolulu, Hawaii, for defendant-appellant/cross-appellee.
 Ke-ching Ning, Green, Ning, Lilly & Jones, Honolulu, Hawaii, for plaintiffs-appellees/cross-appellants.
 Appeal from the United States District Court for the District of Hawaii.
 Before BROWNING, Chief Judge, WRIGHT, and LEAVY, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 In this case we consider whether the Supreme Court's decision in Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) concerning inverse condemnation and ripeness, applies in cases in which state remedies available to the claimant are uncertain and undeveloped. We conclude that it does. Until Austin pursues unsuccessfully compensation in the state courts or those courts establish that he may not recover compensation through inverse condemnation procedures, his claim is not ripe for federal court review.
 
 BACKGROUND
 
 2
 Austin owns 16,339 square feet of land on King Street in downtown Honolulu. His lot is subject to the "Development Plan for the Central Business District of Honolulu." The Plan, adopted in 1969, envisions widening King Street and designates a 20-foot setback. The Comprehensive Zoning Code of the city prohibits new structures within the setback. The city intends to acquire setback land by eminent domain once it begins to widen the street.
 
 
 3
 Until December 1978, Austin maintained a non-conforming commercial building that extended into the setback area. In 1978 he demolished the structure to build a store for Liberty House, a retail establishment. The City Planning Department rejected the plans for the store because the building would have occupied the setback in violation of the zoning ordinance. Rather than seek a variance, Austin communicated with the City Council, indicating that he was willing to amend his building plans and sell the setback area to the city.
 
 
 4
 Although the city refused initially to acquire the land, eventually the City Council began to negotiate with Austin to buy the setback. Relying on the progress of these negotiations and his understanding that the city had committed itself to purchasing the land, he renegotiated the lease with Liberty House to account for the reduction in floor space, and began construction in compliance with the setback requirement and the zoning code.
 
 
 5
 In September 1980, the city told Austin that it would not begin the street widening project for several years and would not acquire the setback until then. Austin sued in federal district court alleging that the city's actions effected a taking for which it must pay just compensation.
 
 
 6
 That court concluded that the city took the setback by the Council's actions. It rejected the city's argument that Austin should have sought a variance before his federal action, concluding that once the taking occurred, Austin could do nothing more to protect his interest. The city appealed.
 
 ANALYSIS
 
 7
 We review de novo the court's conclusions of law. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 8
 To prevail in an inverse condemnation action the landowner must establish that the regulation or state action effects a taking, that it "goes too far," and that he or she has not received just compensation. MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986).[1] Because the finding that a regulation effects a taking turns on how the regulation restricts the land, a court cannot consider an alleged taking by regulation without "a final and authoritative determination of the type and intensity of development legally permitted." Id. Such a final determination consists of two elements, a rejected development plan and denial of a variance. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186-88, 105 S.Ct. 3108, 3116-17, 87 L.Ed.2d 126 (1985); Lake Nacimiento Ranch Co. v. County of San Luis Obispo County, 830 F.2d 977, 980 (9th Cir.1987).
 
 
 9
 To establish that the state failed to offer just compensation, a landowner must seek and be denied compensation through state procedures, including an inverse condemnation action in state court, provided those procedures are adequate. Williamson County, 473 U.S. at 195, 105 S.Ct. at 3121. The Supreme Court explained:
 
 
 10
 because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action ... is not 'complete' until the State fails to provide adequate compensation for the taking.
 
 
 11
 473 U.S. at 195, 105 S.Ct. at 3121; see also Cassettari v. Nevada County, 824 F.2d 735, 737-38 (9th Cir.1987).
 
 
 12
 Austin did not seek a variance from the zoning ordinance or compensation in the state courts. He argues that these failures should not render his claim unripe. He claims that he received a final determination when the city refused to buy the land. Austin contends also that, because the State does not afford an adequate remedy by which he can be compensated, the ripeness analysis of Williamson County does not apply.
 
 
 13
 We need not address Austin's assertion that he was given a final determination from the city. Regardless of our conclusion on that issue, Austin's claim is not ripe for review in federal court because he failed to seek compensation through adequate state remedies.
 
 
 14
 In Williamson County the Supreme Court recognized that inverse condemnation actions under the takings clause, like other claims under the Constitution, are not ripe for review in federal court until the plaintiff establishes that the state failed to remedy the alleged violation. 473 U.S. at 194-95 105 S.Ct. at 3121 (analogizing to Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1974) which held that claimants must pursue state remedies before bringing federal action under the due process clause.) In an inverse condemnation action, the property owner must show that he or she sought just compensation and that the state denied it. "[N]o constitutional violation occurs until just compensation has been denied." Williamson County, 473 U.S. at 194 n. 13, 105 S.Ct. 3121 n. 13.
 
 
 15
 Austin argues that his failure to seek compensation under state law should not render his claim unripe because state procedures are not "reasonable, certain, and adequate," as Williamson County requires.[2] He bears the burden of establishing that state remedies are inadequate. See Norco Constr., Inc. v. King County, 801 F.2d 1143, 1146 (9th Cir.1986).
 
 
 16
 Since the Court decided Williamson County, several federal courts have considered whether its holding applies when state law is unclear or undeveloped. See, e.g., Culebras Enterprises Corp. v. Rivera Rios, 813 F.2d 506 (1st Cir.1987); Littlefield v. City of Afton, 785 F.2d 596 (8th Cir.1986); Lerman v. City of Portland, 675 F.Supp. 11 (D.Me.1987); Kaiser Dev. Co. v. City and County of Honolulu, 649 F.Supp. 926 (D.Haw.1986). These courts have applied Williamson County despite the uncertainty of state law, even when state courts have expressed unwillingness to award damages in inverse condemnation actions. See, e.g., Littlefield, 785 F.2d 596, 609 (8th Cir.1986). The First Circuit noted in Culebras: "Lack of clarity is not unusual ... when legal rights are still in process of definition through case-by-case adjudication." Culebras, 813 F.2d at 514.
 
 
 17
 The Hawaii Constitution provides: "Private property shall not be taken or damaged for public use without just compensation." Haw. Const. art. I, Sec. 20. Austin points to state court decisions denying compensation for takings of vested rights and foregone development costs. He contends that these show that state courts will not award compensation under the constitutional provision. He notes also that neither the Hawaii Supreme Court nor the state legislature has recognized inverse condemnation as a cause of action.
 
 
 18
 After reviewing Hawaii court decisions, we are unconvinced that Austin may not seek compensation under his state's constitutional provision. Although we find no case that recognizes inverse condemnation as a cause of action, neither do we find one that rejects it.[3] Until the state courts establish that landowners may not obtain just compensation through an inverse condemnation action under any circumstances, Hawaii procedures are adequate within the terms of Williamson County and Austin's failure to use them cannot be excused. Cf. Furey v. City of Sacramento, 780 F.2d 1448, 1450 n. 1 (9th Cir.1986) ("[t]he California Supreme Court made clear that Furey's only remedy in a state court action would be 'declaratory relief or mandate precluding the application of the subject land-use regulations.' ") (citations omitted); Corn v. City of Lauderdale Lakes, 816 F.2d 1514, 1517 (11th Cir.1987) ("equitable relief is the exclusive [state] remedy available to a property owner injured by virtue of a confiscatory zoning regulation.")
 
 
 19
 Austin contends next that Williamson County should not apply to his action because we have noted previously that it does not apply to cases involving physical takings. See Hall v. City of Santa Barbara, 833 F.2d 1270, 1281 n. 28 (9th Cir.1986). Austin claims that this case involves a physical taking.
 
 
 20
 We reject the argument. First, Austin has not suffered a physical taking of his land. He retains title and possession. The city has not intruded on the setback, nor has it authorized others to do so. Austin may exclude the public, even the city, if he so chooses. " '[T]he right to exclude [others is] "one of the most essential sticks in the bundle of rights that are commonly characterized as property." ' " See Nollan v. California Coastal Comm'n, --- U.S. ----, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987) (citations omitted). Because Austin retains this right, he has not suffered a physical taking. Furthermore, the discussion in Hall concerned only the requirement that landowners obtain a final determination. Hall did not address whether landowners seeking compensation for a physical taking must first pursue compensation under state law.
 
 
 21
 Austin argues also that the district court's finding that the city took his property by its oppressive conduct, rather than by oppressive regulation, renders Williamson County inapplicable under Martino v. Santa Clara Valley Water Dist., 703 F.2d 1141 (9th Cir.) cert. denied, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). In Martino, we found only that when a taking occurs through oppressive conduct, the landowner's failure to submit a plan and seek a variance from the local authority does not render the claim unripe. Martino, 703 F.2d at 1147. We did not consider the requirement that landowners seeking compensation under the takings clause first pursue state law remedies. Because Martino preceded Williamson County, our failure to address this requirement does not control our analysis here.
 
 
 22
 Finally, Austin contends that because the Court decided Williamson County a year and a half after he filed his federal action, it would be inequitable to apply it retroactively. He argues that under Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), we may decline to apply a decision retroactively if doing so would impose "injustice or hardship." Id. at 107, 92 S.Ct. at 355.
 
 
 23
 Unless a claim is ripe, we do not have jurisdiction to hear it. See United Public Workers of America v. Mitchell, 330 U.S. 75, 89-91, 67 S.Ct. 556, 564-65, 91 L.Ed. 754 (1947); and Hart and Wechsler's The Federal Courts and the Federal System, 145-146 (2d ed. 1973). Because Williamson County affects our jurisdiction to hear takings claims, we must apply it retroactively. "A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only." Firestone Tire and Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981). Contrary to Austin's assertion, we have no discretion to extend our jurisdiction to hear his claim.
 
 
 24
 Because Austin's claim is not ripe for review in federal court, neither the district court nor this court has jurisdiction to hear it. The order of the district court is vacated. We remand the case for dismissal.
 
 
 
 *
 The case was submitted after the parties filed supplemental briefs requested by the panel
 
 
 [1]
 Unlike Herrington v. County of Sonoma, 834 F.2d 1488 (9th Cir.1987), Austin's only claim is for inverse condemnation
 
 
 [2]
 This Court has stated in dictum that the adequacy of state remedies is an issue to be decided by the district court. Norco Const. Inc. v. King County, 801 F.2d 1143, 1146 (9th Cir.1986). Because the issue of ripeness affects our jurisdiction to hear this claim, and because that statement is dictum, we decline to follow Norco
 
 
 [3]
 Nor has Austin established that there is no possibility of relief under Hawaii Revised Statutes 101-3