**MOUNTAIN WATER COMPANY,**
**Plaintiff–Appellant,**

v.

**MONTANA DEPARTMENT OF PUBLIC SERVICE REGULATION; Montana Public Service Commission, Defendants–Appellees.**

No. 88–4097.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1989.

Submission Deferred Feb. 21, 1990.

Resubmitted March 26, 1990.

Decided Nov. 26, 1990.

John Alke, Hughes, Kellner, Sullivan & Alke, Helena, Mont., for plaintiff-appellant.

Robin McHugh, Mont. Public Service Com'n, Helena, Mont., for defendants-appellees.

Before TANG, HALL and BRUNETTI, Circuit Judges.

TANG, Circuit Judge:

Mountain Water Company ("Mountain Water") appeals summary judgment for the Montana Department of Public Service Regulation and the Montana Public Service Commission in Mountain Water's action for a declaratory judgment that Mont.Code Ann. § 69–4–511 (1989) is unconstitutional under the fourteenth and fifth amendments. The statute at issue requires privately—but not publicly-owned Montana water utilities to reimburse their customers for certain costs of repair of customers' individually-owned water service lines. We affirm the district court's judgment that the statute is constitutional.

## FACTUAL AND PROCEDURAL BACKGROUND

Under Montana's regulatory structure, cities and towns are responsible for regulating their publicly-owned water utilities.

Mont.Code Ann. §§ 69–7–101 to –201 (1989). The Montana Public Service Commission ("PSC"), an executive branch of the state (Mont.Code Ann. §§ 2–15–2601, 2–15–2602 (1989)), is responsible for regulating privately-owned water utilities. Mont.Code Ann. §§ 69–3–101, 69–3–102 (1989). All but two of Montana's major water utilities are publicly-owned and therefore regulated by cities and towns. Mountain Water is one of the two major privately-owned water utilities regulated by the PSC.

Customers of privately-owned water utilities in Montana own the water service lines running between their premises and the water main in the public street. Before 1987, these customers of privately-owned water utilities bore both the financial and actual responsibility for the maintenance of their service lines. Mont.Admin.R. 38.5.-2502(5)(1987). These customers were therefore liable for costs or damages arising not only from repairs of service lines occurring on their own property, but also arising from repairs occurring past their property boundaries and in the public street.

In 1987, Montana State Senator Lynch introduced a bill in the legislature making all Montana water utilities, whether publicly- or privately-owned, liable for costs or damages arising from the repair of customer service lines past customers' property boundaries. SB 28, Mont. 50th Leg., Reg. Sess. (1987). Senator Lynch testified to his personal difficulties when the Butte Water Company, Montana's other major privately-owned water utility, insisted that he take responsibility for repair of his service line in the public street. *Senate Hearings on SB 28 Before the Local Gov't Comm.*, Mont. 50th Leg., Reg.Sess., 1 (Jan. 13, 1987) (statement of Sen. Lynch). He also testified to his belief that in some Montana cities, publicly-owned utilities already bore the liability for costs and damages arising from the repair of customer service lines in the street. *Id.* After hearings in both houses, the Montana legislature passed an amended version of Senator Lynch's bill

but exempting publicly-owned water utilities from liability for these costs.

Senator Lynch's bill (hereafter, "liability statute") as enacted was codified at Mont. Code Ann. § 69–4–511. This statute provides that:

> (1) A property owner is responsible for the costs of constructing privately supplied water service pipelines from the main to his premises and for maintaining service pipelines from his property line to his premises. The private water service provider is responsible for the cost of maintaining water service pipelines from the main to the owner's property line, except that the property owner shall pay for pipe and other supplies used in maintaining water service lines between the main and his property line.

> (2) A property owner is not liable for any injury or property damage associated with excavation in maintaining water service pipelines if the excavation does not occur between his property line and his premises.

This liability statute makes privately-owned Montana water utilities liable for most of the costs of repair of individual customers' service lines between customers' property boundaries and the utility's main. Privately-owned water utilities must reimburse their customers under the liability statute for costs of these repairs. Further, by exempting customers from liability for injuries caused by repair of their lines past their property boundaries, the liability statute apparently makes the privately-owned water utility also responsible for damages arising from the repairs.

Mountain Water sued in federal district court for a declaratory judgment that the liability statute violates equal protection guarantees of the fourteenth amendment and the uncompensated "takings" clause of the fifth amendment.[1] Mountain Water and the PSC stipulated to the facts and filed cross motions for summary judgment. The district court granted summary judgment for the PSC, upholding the constitutionality of the liability statute. Mountain Water timely appealed to this court.

## DISCUSSION

I. *Standard of Review*

■ We review the district court's grant of summary judgment de novo. *Kruso v. Int'l Tel. & Tel.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We note that the parties present no issues of disputed fact and argue their positions as a matter of law. Our review on appeal thus focuses on the constitutional issues Mountain Water raises which we review de novo also. *Jackson Water Works v. Public Util. Comm'n*, 793 F.2d 1090, 1092 (9th Cir.1986), *cert. denied*, 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 184 (1987).

II. *Mountain Water's Equal Protection Challenge*

A. Rational Relation Test

Mountain Water contends that the liability statute's distinction between publicly- and privately-owned water utilities, classifying only privately-owned utilities for liability, violates the fourteenth amendment's equal protection guarantee.

---

**1.** After submission of this case, this court *sua sponte* questioned whether we have jurisdiction. The parties then briefed the issues of ripeness and federal question jurisdiction. We conclude we have jurisdiction over Mountain Water's facial challenge to the constitutionality of the state liability statute under the line of authority stemming from *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *See* 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3524 at 151–154 (1984 & Supp.1990). We note, however, that eleventh amendment immunity bars *Ex parte Young*–type actions against arms of the state. *See id.* Mountain Water's complaint names arms of the state and thus

may implicate Montana's eleventh amendment immunity if Montana has not consented to suit. Because neither Mountain Water nor Montana have argued eleventh amendment immunity either below or on appeal, we decline to decide this question. *See Roberts v. College of the Desert*, 870 F.2d 1411, 1415 (9th Cir.1989) (citing *Patsy v. Board of Regents*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982)). While eleventh amendment immunity bears on our jurisdiction, we may for prudential reasons decline to raise the issue *sua sponte*. *Patsy*, 457 U.S. at 515 n. 19, 102 S.Ct. at 2567 n. 19. We therefore identify no jurisdictional impediment to our deciding the merits of this case.

■ The challenged liability statute is an economic regulation, and thus commands constitutional scrutiny most deferential to the legislature. *See Jackson Water Works*, 793 F.2d at 1093. To satisfy equal protection requirements, where a challenged statute implicates no suspect class, we must determine only whether the statute's classification scheme is rationally related to a legitimate governmental purpose. *Kadrmas v. Dickinson Pub. Schools*, 487 U.S. 450, 457–58, 108 S.Ct. 2481, 2486–87, 101 L.Ed.2d 399 (1988). In our review of governmental purposes, moreover, we need not rely only upon those purposes the legislature, litigants, or district court have espoused, but may also consider any other rational purposes possibly motivating enactment of the challenged statute. *See id.* at 463, 108 S.Ct. at 2489.

■ Lacking an express statement of legislative purpose in this case,[2] the district court held that the purpose of the liability statute is to help assure proper maintenance of customer service lines. Proper repair of these service lines is essential to the integrity of any water system, and so is manifestly a legitimate governmental purpose. The Montana legislature may have plausibly believed that customers would repair their service lines sooner or to higher standards were they assured a utility would reimburse them for the costs.

Mountain Water argues, however, that the liability statute's distinction between publicly- and privately-owned utilities is not rationally related to this purpose of enhanced maintenance. Mountain Water points out that the statute cannot effectively enhance maintenance of Montana water systems because, by exempting publicly-owned utilities, the statute exempts all but two of Montana's major water utilities from liability. Further, the statute imposes no affirmative duty on the privately-owned utilities to repair customer service lines. Instead, the liability statute leaves to individual customers' discretion whether and to what standards they repair their own service lines.

■ If the liability statute's exemption of publicly-owned utilities must be rationally related to the statute's ostensible purpose of enhancing service line repair, then Mountain Water is correct that the statute's classification of water utilities into publicly- and privately-owned bears little relationship to its purpose. Equal protection analysis, however, demands no such precise nexus between the challenged statute's classification and the statute's overall purpose. Rather, the liability statute's distinction between publicly- and privately-owned utilities must withstand Mountain Water's challenge unless it is " 'so unrelated to the achievement of *any combination* of legitimate purposes' " that a court must " 'conclude that the legislature's actions were irrational.' " *Kadrmas*, 487 U.S. at 462–63, 108 S.Ct. at 2489 (quoting *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)) (emphasis added). We must therefore consider any other possible purposes the Montana legislature might have sought to achieve in enacting the liability statute exempting publicly-owned utilities.

We note Montana's regulatory scheme entrusting the regulation of publicly-owned water utilities to the cities and towns which own them. Mont.Code Ann. §§ 69–7–101 to –201 (1989). The Montana legislature could have included publicly-owned utilities in the liability statute's mandate, although it might have had to amend statutes authorizing local control of publicly-owned utilities to do so. It seems, however, that the Montana legislature preferred to permit the individual localities to decide whether to impose similar liability on their local, publicly-owned water utilities. Cities and towns regulating their own publicly-owned water utilities also have the authority to impose liability for repair costs on their own water utilities, just as the legislature

---

**2.** From the record it appears that the Montana legislature made no findings of fact concerning the liability statute legislation. The only legislative statement of purpose for the enactment of the bill, moreover, was contained in its title,

"AN ACT TO CLARIFY A PROPERTY OWNER'S FINANCIAL RESPONSIBILITY AND LIABILITY FOR ... MAINTENANCE OF ... WATER SERVICE PIPELINES...." SB 28, Mont. 50th Leg., Reg. Sess. (1987).

has imposed liability for repair costs on privately-owned utilities through the liability statute. *See* Mont.Code Ann. § 69–7–201 (1989). Moreover, the liability statute's applicability to privately-owned water utilities is also consonant with Montana's regulatory scheme. In enacting the liability statute, the legislature regulated only those water utilities still wholly subject to state regulation through the PSC; that is, privately-owned water utilities. Fidelity to a regulatory scheme entrusting regulation of publicly-owned utilities to localities and regulation of privately-owned utilities to the state is also manifestly a legitimate governmental purpose.

Given the combined legislative purposes of enhancing service line maintenance and of continuing to empower localities to regulate their own publicly-owned water utilities, we hold that the liability statute's distinction between publicly- and privately-owned water utilities is rationally related to legitimate government purposes. We also note that Montana localities' failure to impose liability on their publicly-owned water utilities as the state has imposed liability on privately-owned water utilities through the liability statute does not defeat the liability statute's rational relationship to legitimate government purposes. Such disparity in regulation between locally and state controlled water utilities may merely represent legitimate autonomous local choices.

## B. "Heightened Scrutiny"

■ Mountain Water contends, however, that we should closely examine the Montana legislature's actual motive in exempting publicly-owned water utilities from the liability statute. Relying on *USDA v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), Mountain Water urges "heightened scrutiny" of the liability statute's relation to legitimate government purposes. In *Moreno*, the Supreme Court decided that disqualifying members of unrelated households from receiving food stamps was wholly irrelevant to the ostensible purpose of preventing fraud. *Id.* at 537–38, 93 S.Ct. at 2827. Instead, and as the legislative history revealed, Congress's only pur-

pose in enacting the disqualification was to harm hippie communes, "a politically unpopular group." *Id.* at 534, 93 S.Ct. at 2826.

Mountain Water adduces a legislative record in this case of the sponsoring Senator's testimony about his personal difficulties with a privately-owned water utility in the repair of his home's service line. Mountain Water asserts that neither a concern for service line repair generally nor the distinction between PSC and local regulation of water utilities prompted enactment of the amended liability statute. Instead, according to Mountain Water, the legislature's sole purpose in enacting the liability statute was, as in *Moreno*, to harm a temporarily "politically unpopular group," privately-owned water utilities.

■ Under the *Moreno* analysis, a court may hold a statute not implicating a suspect class violative of equal protection if the statute serves no legitimate governmental purpose and if impermissible animus toward an unpopular group prompted the statute's enactment. *See Moreno* 413 U.S. at 534, 538, 93 S.Ct. at 2825, 2827. We have already considered the governmental purposes the liability statute serves in this case and have held them legitimate. Moreover, our de novo review of the record in this case fails to support Mountain Water's allegations about the Montana legislature's or even the sponsoring Senator's animus toward privately-owned water companies. Though, as with much legislation, personal experience may have inspired Senator Lynch to draft the bill, his original bill imposed liability for repairs and damages on *all* Montana water utilities, not just those privately owned. Further, Senator Lynch and his colleagues favoring the bill agreed that water service line repair was a statewide problem worthy of legislative attention. *House Hearings on SB 28 Before the Local Government Comm.*, Mont. 50th Leg., Reg.Sess., 10 (Mar. 6, 1987) (statements of Sen. Lynch, Rep. Brown, Rep. Pistoria). The legislature finally amended Senator Lynch's bill to exempt publicly-owned water utilities from liability, but, as we have noted, it may have done so to

assure that regulation of publicly-owned water utilities remained a local prerogative. *See, e.g., id.* at 6 (comment of Rep. Squires). The record thus evinces no impermissible motive in the Montana legislature's consideration of Senator Lynch's bill or in amending it to exempt publicly-owned water utilities. Moreover, and also unlike the hippie communes in *Moreno*, privately-owned water utilities are neither members of a suspect class nor a politically unpopular group prompting "heightened" scrutiny in equal protection analysis from this court. We therefore hold that the *Moreno* analysis for equal protection is inapplicable to this case.

### III. *Mountain Water's Fifth Amendment Challenge*

The fifth amendment commands: "nor shall private property be taken for public use without just compensation." U.S. Const.amend. V. The fourteenth amendment makes the fifth amendment's prohibition applicable to the states. *Webb's Fabulous Pharmacies v. Beckwith,* 449 U.S. 155, 160, 101 S.Ct. 446, 450, 66 L.Ed.2d 358 (1980). We agree with the district court and the parties in this case that by requiring Mountain Water to reimburse its customers for repairs to their privately-owned service lines, the liability statute effects a taking of Mountain Water's property. Mountain Water argues that the liability statute fails to fulfill the "public use" and "just compensation" requirements of the fifth amendment.

### A. Public Use

■ Mountain Water points out that the liability statute forces Mountain Water to expend its privately-owned funds to reimburse its private customers for their costs in repairing their individually-owned service lines. Noting that " 'one person's property may not be taken for the benefit of another private person without a justifying purpose,' " *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984) (quoting *Thompson v. Consolidated Gas Corp.,* 300 U.S. 55, 80, 57 S.Ct. 364, 376, 81 L.Ed. 510 (1937)), Mountain Water contends that the liability

statute effects a taking of its private property solely for the purpose of benefiting its private customers. The liability statute serves no public purpose of enhancing maintenance of water systems, Mountain Water argues, because the repair of service lines remains the customer's sole prerogative, the statute imposes no new "service obligation" on Mountain Water to maintain the lines, and all the statute accomplishes is a forced transfer of money from Mountain Water to private individuals, its customers proceeding with repairs.

■ In *Hawaii Housing Authority v. Midkiff,* the Supreme Court emphasized the deference courts owe to legislative determinations of public use. *Midkiff,* 467 U.S. at 241–43, 104 S.Ct. at 2329–31. A taking satisfies the constitutional public use requirement if it advances a "conceivable public purpose" and regardless of whether it succeeds in realizing that purpose. *Id.* at 241–42, 104 S.Ct. at 2329–30. Moreover, it is not necessarily constitutionally relevant that the statute may force the transfer of private property, as here, from one private entity or individual to another. *Id.* at 243–44, 104 S.Ct. at 2330–31. Because we have decided that the Montana legislature could have rationally conceived that the liability statute would enhance service line maintenance, we hold that the statute effects a taking for a public use even if the statute proves ineffective in achieving that purpose.

Moreover, the liability statute may serve the additional public purpose of redistributing the cost of service line repairs. Prior to enactment of the liability statute, customers of privately-owned water utilities bore sole financial responsibility for service line repair costs. The liability statute not only shifts this financial burden from the customer to privately-owned utilities, but also redistributes the financial burden among all the customers of the utility. The statute accomplishes this redistribution by forcing privately-owned utilities to request higher rates to cover their expenses in reimbursing customers whose service lines require repair. By paying these higher rates, all the customers of a privately-

owned utility share in the cost of repairing some of the customers' service lines. The liability statute thus redistributes the cost of service line repair from individual customers to all customers through higher rates, and it employs the privately-owned utility as the agent for that redistribution. This possible redistribution purpose is also a public use, and we defer to the wisdom of the legislature in requiring that public use of Mountain Water's private property. *See Midkiff,* 467 U.S. at 242–43, 104 S.Ct. at 2330–31.

### B. Just Compensation

■ The dedication of private utility property to public use "creates its own set of questions under the Takings Clause of the Fifth Amendment," usually answered by an analysis of utility rate structures and whether those rates justly compensate the utility. *Duquesne Light Co. v. Barasch,* 488 U.S. 299, 306, 109 S.Ct. 609, 615, 102 L.Ed.2d 646 (1989). The district court held that Mountain Water's recourse as a utility to obtain just compensation for the property taken under the liability statute is to seek rate increases before the PSC. We agree.

Mountain Water attempts to distinguish its case from the traditional line of fifth amendment utility rate cases by its characterization of the property taken. Mountain Water argues that its funds used to reimburse customers for repairs under the liability statute are not services in which the public has an interest and for which Mountain Water can seek compensation in the form of rates. Dedication of a utility's private property to services for the public, of course, characterizes the usual fifth amendment utility rate case. *See id.* In this case, Mountain Water argues, its funds are accumulated profits from past operations in which the public has no interest. *See Board of Pub. Util. Comm'rs v. New York Tel. Co.,* 271 U.S. 23, 32, 46 S.Ct. 363, 366, 70 L.Ed. 808 (1926). Under Mountain Water's analysis then, the liability statute's taking of these funds necessitates a judicial eminent domain action, just as the taking of a parcel of land would so

necessitate. Unlike judicial eminent domain proceedings, Mountain Water points out, PSC rate setting is prospective. PSC rate setting therefore, cannot compensate Mountain Water dollar-for-dollar for the funds the utility must transfer to its customers.

■ We must reject Mountain Water's subtle distinctions for several reasons. First, the capital funds character of the property taken from Mountain Water is constitutionally irrelevant. A state may compensate through rates the dedication of a utility's private property to public use whether that property is plant, operations, or capital funds. As the Supreme Court "reaffirmed" in *Duquesne Light,* "all of the subsidiary aspects of valuation for rate-making purposes [cannot] ... properly be characterized as having a constitutional dimension, despite the fact that they might affect property rights to some degree." *Id.,* 488 U.S. at 310, 109 S.Ct. at 617 (citing *Federal Power Comm'n v. Hope Natural Gas Co.,* 320 U.S. 591, 602, 64 S.Ct. 281, 287, 88 L.Ed. 333 (1944)). Given legislative authority to dedicate Mountain Water's private funds for public use, which Mountain Water concedes, the PSC may value those funds along with Mountain Water's plant and other private property in a PSC rate order.

■ Second, that Mountain Water must seek just compensation through PSC rate setting rather than through an eminent domain action is not of constitutional significance.[3] Only if the PSC's rate order fails to compensate Mountain Water justly for all of its private property dedicated to public use can Mountain Water complain of a violation of its fifth amendment rights. *See id.,* 488 U.S. at 306, 109 S.Ct. at 615 ("The guiding principle has been that the Constitution protects utilities from being limited to a charge for their property serving the public which is so 'unjust' as to be confiscatory."). Any failure of a rate order to compensate Mountain Water justly for expenses incurred under the liability statute would make the rate order, but not the statute, unconstitutional. *See id.,* 488 U.S.

**3.** Mountain Water's objections to PSC rate-setting as "legislative" and potentially biased have

no merit given this court's holding in *Jackson Water Works,* 793 F.2d at 1097.

at 314, 109 S.Ct. at 619 (if the ratemaking "system fails to pass muster, it will not be because the legislature has performed part of the work"). Third, we note that utilities often in some sense share their accumulated profits with customers when utilities fail to achieve their authorized returns. Indeed, Mountain Water's "losses" under the liability statute are not constitutionally significant unless its set rates are "unjust." *See id.*, 488 U.S. at 310, 109 S.Ct. at 617.

█ Finally, we conclude that the liability statute does impose new utility "service obligations" on Mountain Water: first, to help assure service line maintenance; and second, to redistribute the cost of service line maintenance among all customers. A statute directing Mountain Water itself to perform service line maintenance would likewise have served these two purposes and there would be no question but that rates would compensate Mountain Water for its property used in performing these services. The liability statute making Mountain Water liable for the costs of repairs achieves exactly the same purposes as a statute directing the utility itself to perform repairs. The liability statute therefore imposes a utility service obligation on Mountain Water compensable through rates.

## CONCLUSION

The liability statute's exemption of publicly-owned utilities is rationally related to legitimate government purposes and therefore not violative of equal protection under the fourteenth amendment. Any taking of Mountain Water private property the liability statute effects is for a public use. Mountain Water may seek just compensation for its property taken through rate setting before the PSC. The liability statute is therefore not violative of the fifth amendment. The district court's order granting summary judgment for the Montana Department of Public Service Regulation and the Montana PSC is

AFFIRMED.