**SIERRA LAKE RESERVE,**
Plaintiff–Appellant,

v.

**The CITY OF ROCKLIN; the Rocklin Mobile Home Rent Review Commission; Carlos Urrutia; Rusty Selix; Rudolf Michaels; George Paras, Defendants–Appellees.**

No. 89–15371.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 15, 1990.

Decided July 9, 1991.

---

3. *See also United States v. Skinna,* 931 F.2d 530     (9th Cir.1991).

952

William H. Plageman, Jr., and Anthony C. Rodriguez, Thelen, Marrin, Johnson & Bridges, Oakland, Cal., for plaintiff-appellant.

Michelle Marchetta Kenyon, McDonough, Holland & Allen, Sacramento, Cal., for defendants-appellees.

Before GOODWIN, KOZINSKI and NOONAN, Circuit Judges.

KOZINSKI, Circuit Judge.

Sierra Lake, a mobile home park owner, alleges that the City of Rocklin's rent control ordinances had effected a taking of its property without just compensation; plaintiff also complains of due process and equal protection violations in connection with the passage and implementation of the ordinances.

We consider whether plaintiff's taking claim is ripe for adjudication in federal court despite its failure to exhaust state judicial remedies and whether the district court properly dismissed Sierra Lake's procedural due process and equal protection claims. We also consider whether plaintiff adequately pleaded a substantive due process claim and, if so, whether it was properly dismissed without leave to amend.

### Facts

Sierra Lake bought a mobile home park in the City of Rocklin in late 1978, at a time when no rent control was in effect. On September 1, 1979, Sierra Lake raised its rents to cover the cost of improvements. On November 5, the City imposed rent control on Rocklin mobile home parks and set all rents at their July 1979 level—effectively cancelling Sierra Lake's September rent increase.

Sierra Lake continued to make capital improvements and, on October 16, 1984, applied for a rent increase under Ordinance No. 472, the rent control ordinance then in effect. The Rocklin City Manager rejected the application[1] and advised Sierra Lake to refile under a new rent control ordinance, soon to be enacted.

On April 1, 1985, the City replaced Ordinance No. 472 with Ordinance No. 529. Whereas previous ordinances provided that mobile home park owners could recover all capital expenditures, the new ordinance limited recovery to *reasonable* expenditures. Expenditures on work completed within the last twelve months were presumed to be reasonable; previously incurred expenditures were subject to review for reasonableness. On August 30, 1985,

---

1. Sierra Lake alleges that the rejection was "wrongful[ ]." CR 1, Complaint at 4.

Sierra Lake refiled its rent increase application under the new ordinance. The City Manager rejected this application because Sierra Lake had not indicated the place of execution.[2] The City Manager refused to allow Sierra Lake to cure the defect, even though the application form contained no blank space for indicating the place of execution.

Sierra Lake refiled the application on September 30. The City Manager accepted this application and referred it to mediation. The rent increase finally became effective on December 1, 1985.

Sierra Lake filed suit in district court on September 23, 1987, alleging due process and equal protection violations. In addition, the complaint alleged that the vacancy control provision common to all the City's rent control ordinances effected a taking for which just compensation was due. This provision limited the amount by which Sierra Lake could increase the rent following a vacancy at the park. According to Sierra Lake, this transferred an interest in the rented premises from landlord to tenant, an interest that departing tenants were able to monetize by selling their mobile homes at a premium.[3] The district court granted defendants' motion under Fed.R.Civ.P. 12(b)(6), dismissing all of Sierra Lake's claims without leave to amend.

### Discussion

We review the district court's dismissal of plaintiff's claims de novo. We take all material allegations of the non-moving party as true and construe them in the light most favorable to that party. "In this type of action, where the property owner contends that it has been unconstitutionally deprived of property through governmental regulation, motions to dismiss and motions for summary judgment must be viewed with particular skepticism. The impor-

tance of the specific facts and circumstances relating to the property and the facts and circumstances relating to the governmental action militate against summary resolution in most cases." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990) (citation omitted).

### I.  Takings Claim

Plaintiff claims that the rent control ordinance resulted in an unconstitutional taking of its property. The facts of this case are almost identical to those of *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir.1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988). In *Hall*, we found that a physical taking could result where "the tenant is able to derive an economic benefit from the statutory leasehold by capturing a rent control premium when he sells his mobile home." *Id.* at 1276. Here, as in *Hall*, the plaintiff alleges that a rent control ordinance has operated to transfer a valuable possessory interest in the property from the landlord to the tenant, and the tenant is able to capture a premium to which the landlord would otherwise be entitled.

While recognizing that the complaint stated a takings claim under Ninth Circuit law, the district court found the claim unripe under *Williamson County Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson*, the United States Supreme Court held that a takings claim cannot be presented in federal court if the state courts are available to provide compensation: "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195, 105 S.Ct. at

---

**2.**  Sierra Lake alleges that the City Manager also rejected the application on "non-statutory grounds ... unilaterally and arbitrarily imposed by the city manager himself." Brief for Appellant at 7.

**3.**  Despite their name, mobile homes are not all that mobile. Thus, when a tenant sells his mo-

bile home, the home remains on the rent-controlled space, resulting in a higher price to the buyer than a home on a space not subject to rent control. *See Hall v. City of Santa Barbara*, 833 F.2d 1270, 1273–74 (9th Cir.1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988).

3121. Interpreting *Williamson*, we have held that if state law was "unclear or undeveloped" at the time of the alleged taking, plaintiff must first try to recover in state court. *Austin v. City and County of Honolulu*, 840 F.2d 678, 680 (9th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). Thus, unless plaintiff can show that "the state courts establish that landowners may not obtain just compensation through an inverse condemnation action under any circumstances, [California] procedures are adequate within the terms of *Williamson County.*" *Id.* at 681.

At the time of the alleged taking, California state courts consistently took a dim view of takings claims based on rent control ordinances. *See, e.g., Fisher v. City of Berkeley*, 37 Cal.3d 644, 693 P.2d 261, 209 Cal.Rptr. 682 (1984), *aff'd*, 475 U.S. 260, 106 S.Ct. 1045, 89 L.Ed.2d 206 (1986); *Nash v. City of Santa Monica*, 37 Cal.3d 97, 688 P.2d 894, 207 Cal.Rptr. 285 (1984), *appeal dismissed*, 470 U.S. 1046, 105 S.Ct. 1740, 84 L.Ed.2d 807 (1985); *Birkenfeld v. City of Berkeley*, 17 Cal.3d 129, 550 P.2d 1001, 130 Cal.Rptr. 465 (1976). Even when they found a rent control ordinance unconstitutional, the remedy they granted was invalidation rather than compensation. *See, e.g., Gregory v. City of San Juan Capistrano*, 142 Cal.App.3d 72, 191 Cal.Rptr. 47 (1983).[4]

More germane to our case, the state appellate courts have explicitly rejected compensation under the theory we adopted in *Hall*. In *Oceanside Mobilehome Park Owners' Ass'n v. City of Oceanside*, 157 Cal.App.3d 887, 204 Cal.Rptr. 239 (1984), a group of mobile home park owners challenged the vacancy control aspect of a rent control ordinance because it allowed tenants to sell their mobile homes at a premium. The court viewed the claim as a regulatory challenge and rejected it, stating that "[t]he ordinance is structured to establish a fair base rent which reflects general market conditions.... Rents will not be 'reduced more than required for the purposes of the police power.'" *Id.* at 907, 204 Cal.Rptr. 239.

Two recent state court opinions have refused to follow our decision in *Hall*. *Yee v. City of Escondido*, 224 Cal.App.3d 1349, 274 Cal.Rptr. 551 (1990); *Casella v. City of Morgan Hill*, 230 Cal.App.3d 43, 280 Cal. Rptr. 876 (1991). These courts considered physical takings challenges to mobile home rent control ordinances that were virtually identical to those in *Oceanside* and *Hall*. In *Yee*, the court "reviewed the issue anew in light of *Hall*," and found "*Hall*'s reasoning unpersuasive and reaffirm[ed] the conclusion ... reached in *Oceanside.*" *Yee*, 224 Cal.App.3d at 1351, 274 Cal.Rptr. 551. Similarly, the *Casella* court "repudiate[d] *Hall*'s attempt to bootstrap a mobile home rent control ordinance—an economic regulation—to the Supreme Court's 'very narrow' holding in *Loretto* [*v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) ]." *Casella*, 230 Cal.App.3d 43, 52, 280 Cal.Rptr. 876. We accept *Oceanside*, *Yee* and *Casella* as correct statements of California law, there being no contrary authority. Thus, plaintiff does not rely on the "mere generalized hostility of the state courts to takings claims," *Schnuck v. City of Santa Monica*, 935 F.2d 171, 174 (9th Cir.1991), but instead on its demonstrated inability to "obtain just compensation through an inverse condemnation action under any circumstances." *Austin*, 840 F.2d at 681. The district court erred in dismissing plaintiff's takings claim.[5]

---

**4.** The Supreme Court has since held that compensation is required for losses incurred while an invalid regulation was in effect. *See First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 318–19, 107 S.Ct. 2378, 2387–88, 96 L.Ed.2d 250 (1987). The relevant date for an inquiry as to the status of the state law, however, is the time of the taking. *See Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120; *Del Monte Dunes*, 920 F.2d at 1507 (holding ripe a claim for a pre–1987 taking because prior to *First English*, "California law did not permit landowners to seek compensation for a regulatory taking through an action in inverse condemnation").

**5.** Contrary to the suggestion in the concurrence, the substantive issue decided in *Hall v. City of Santa Barbara* is not before us. We note, however, that the only other circuit to address this issue reached the same result after interpreting the same Supreme Court cases as we did in *Hall*.

## II. The Remaining Claims

Noting that "overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983," *Zinermon v. Burch*, 494 U.S. 113, 122, 110 S.Ct. 975, 982, 108 L.Ed.2d 100 (1990), the Supreme Court divided the universe of section 1983 claims into three categories. The first consists of claims under an express constitutional provision that by its terms prohibits some state action. In such cases, the violation occurs and becomes actionable at the time of injury. *Id.*, 110 S.Ct. at 983. The second category consists of claims under the "substantive component [of the Due Process Clause] that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Substantive due process claims, like claims for violations of express constitutional provisions, arise at the time of the violation; a plaintiff "may invoke § 1983 regardless of any state-tort remedy that might be available to compensate him for the deprivation of these rights." *Id.; see also Shah v. County of Los Angeles*, 797 F.2d 743 (9th Cir.1986). We discuss plaintiff's substantive due process claims at pp. 957–58 *infra*. The final category consists of procedural due process claims. In these cases, the violation does not occur and is therefore not actionable "unless and until the State fails to provide due process." *Zinermon*, 494 U.S. at 122, 110 S.Ct. at 983. We discuss plaintiff's procedural due process claims immediately below.

### A. Procedural Due Process

■ A claim for violation of procedural due process has two components. First, plaintiff must show that a protected property interest was taken. Second, it must show that the procedural safeguards surrounding the deprivation were inadequate. *See Board of Regents v. Roth*, 408 U.S.

564, 568–69, 92 S.Ct. 2701, 2704–05, 33 L.Ed.2d 548 (1972).

■ Plaintiff first claims a property interest in the rent increases allowable under the predecessors to Ordinance 529 on account of expenditures made for capital improvements to the rent controlled property. As noted, prior to Ordinance 529 all expenditures on capital improvements could be recovered through rent increases, whereas under Ordinance 529 expenditures on work completed more than 12 months prior to the application have to be adjudged reasonable by mediators, subject to review by arbitrators. Plaintiff claims that it incurred a variety of expenditures in reliance on prior law, and that its property interest was diminished or impaired when the law was changed retroactively so as to deny it rent increases justified by expenditures already incurred. Under this theory, the deprivation resulted from the action of the City in passing Ordinance 529 and making it retroactive.

Second, plaintiff claims that even if it had no vested property rights at the time it spent the money for capital improvements, such rights vested when Sierra Lake attempted to file its application for a rent increase, before Ordinance 529 went into effect. Plaintiff claims its application was wrongfully rejected by the City Manager who told Sierra Lake to refile after the new ordinance went into effect. Under this second scenario it was the action of the City Manager in wrongfully rejecting the rent increase application, and his directive that the application not be refiled until the new law was passed, that caused the alleged deprivation.

Finally, Sierra Lake claims a property interest in one-month's cost-of-living rent increase under Ordinance 529.[6] According to Sierra Lake, it presented a properly filled out application under Ordinance 529 on August 30, 1985, but the City Manager rejected it for arbitrary and insubstantial reasons. *See* note 2 *supra*. The rejection, according to Sierra Lake, resulted in a one-

---

*See Pinewood Estates v. Barnegat Township Leveling Bd.*, 898 F.2d 347, 353–54 (3d Cir.1990).

**6.** Ordinance 529 exempts from review cost-of-living rent increases based on a formula derived from the California Consumer Price Index.

month delay in the approval of the rent increase, costing it a month's higher rent to which it was otherwise entitled.

As to plaintiff's first theory, it simply fails to state a claim for procedural due process. Even assuming that plaintiff had a vested interest in the rent increases allowed by prior law, it received all the process due it when the City's elected officials discharged their legislative responsibilities in the manner prescribed by law. While plaintiff may challenge legislative action on substantive grounds or demand compensation if the action amounts to a taking, it may not raise a procedural due process challenge to such action. When the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.[7]

■ Plaintiff's second and third theories, although involving different alleged property interests, both hinge upon a claim that the City Manager treated plaintiff's application wrongfully and arbitrarily, depriving it of a property right that had vested under state law. Such allegations can amount to a claim for denial of procedural due process. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1405–06 (1989), *cert. denied*, — U.S. —, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). Whether such a claim is barred by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), is unclear after *Zinermon*. *Parratt* held that a plaintiff must first pursue state remedies when bringing a claim for violation of procedural due process based on random, unauthorized acts of state officials; *Zinermon* appears to allow federal claims in similar situations by focusing on the authority and function of the state official in question. Two of our sister circuits have taken conflicting views on the subject, in each case raising strong dissents. *See Caine v. Hardy*, 905 F.2d 858 (5th Cir.1990); *id.* at 863 (Jones, J., dissenting); *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) (en banc), *cert. denied*,

— U.S. —, 111 S.Ct. 783, 112 L.Ed.2d 846 (1990); *id.* at 1408 (Easterbrook, J., concurring); *id.* at 1410 (Cudahy, J., joined by Cummings and Posner, JJ., dissenting). We need not enter the fray at this time because plaintiff's claims about the City Manager's action can equally well be stated as substantive due process claims. Where, as here, the plaintiff alleges that the denial of due process consists of an official's arbitrary action, a claim for violation of substantive due process is indistinguishable from a claim for violation of procedural due process. Because the Supreme Court held in *Zinermon* that substantive due process claims are not subject to diversion to state court under *Parratt, see* 110 S.Ct. at 983, we need not consider whether the procedural due process claims, standing alone, would have to be so diverted.

### B. *Substantive Due Process*

■ As noted, Sierra Lake's procedural due process claims can also be stated as substantive due process claims. While a substantive due process claim may arise out of the same facts as a procedural due process claim, the claims are different in several important respects. Whereas a procedural due process claim challenges the procedures used in effecting a deprivation, a substantive due process claim challenges the governmental action itself. Because the harm of a substantive due process violation occurs at the time of the wrongful government action, plaintiff's section 1983 action arises when the wrongful action is taken. *Zinermon*, 110 S.Ct. at 983. *Parratt*'s requirement that plaintiff avail itself of state tort remedies does not apply to substantive due process claims. *Id.*

■ To establish a violation of substantive due process, Sierra Lake "must prove that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " *Sinaloa*

---

**7.** We need not consider here whether a claim of major corruption of the legislative process—such as the acceptance of bribes by one or more of the legislators—would give rise to a procedural due process claim.

*Lake Owners*, 882 F.2d at 1407 (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926)); *see also Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir.1988).

According to the allegations of the complaint, the City and its officials obstructed Sierra Lake's rent increase applications at almost every turn, and then finally allowed an increase that was still less than what Sierra Lake considers adequate. It is well within the realm of possibility that plaintiff could establish that the City's actions in processing the applications were wrongful or arbitrary. Given that plaintiff could state a substantive due process claim, the district court erred in dismissing without leave to amend. *Hall*, 833 F.2d at 1274 n. 6; *see also McCalden v. California Library Ass'n*, 919 F.2d 538, 546–47 (9th Cir. 1990).[8]

■ Sierra Lake may also have a substantive due process claim to the extent it complains that Ordinance 529 deprived it of a "fair and reasonable" return on its investment by denying it rent increases on account of capital improvements made prior to its enactment and by limiting the amount it may recover on account of later-made improvements. *See Guaranty National Insurance Co. v. Gates*, 916 F.2d 508, 512–14 & n. 4 (9th Cir.1990).

Under *Guaranty National*, every dollar the landlord puts into the property by way of capital improvements constitutes an investment in the property for which a "fair and reasonable" return must be allowed. Breaking even is not enough; the law must provide for a profit on one's investment. *Id.* at p. 515. Thus, Ordinance 529 must do more than simply allow plaintiff to pass through certain costs; it must ensure that plaintiff will receive a reasonable return on those expenditures.[9] To the extent plaintiff alleges that the rent increases allowed on account of capital improvements merely offset the cost of those improvements (or less), it has stated a claim for a violation of substantive due process under *Guaranty National*.[10]

■ Sierra Lake also alleges a substantive due process violation based on the enactment of the vacancy control provision of the ordinance, *see* pp. 953–54 *supra*. To prevail on this claim, Sierra Lake must show that no rational relationship exists between the vacancy control provision and the purpose of the ordinance. *See Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 892 (9th Cir.), *cert. denied*, 488 U.S. 965, 109 S.Ct. 489, 102 L.Ed.2d 526 (1988). Sierra Lake cannot meet this heavy burden. Although it may be true that the ordinance in some cases takes money from the landlord and puts it into the pocket of a tenant who no longer resides at the park, the City Council could reasonably believe that in the majority of cases the ordinance serves the valid public purpose of keeping mobile home rent from becoming prohibitively high. *See, e.g., Pennell v. City of San Jose*, 485 U.S. 1, 13, 108 S.Ct. 849, 858, 99 L.Ed.2d 1 (1988). How well the ordinance serves this purpose is a legislative question, one the court will not consider.

### C. Equal Protection Claims

■ Sierra Lake also alleges that it was denied equal protection of the laws. Plaintiff can establish an equal protection claim by showing that the City of Rocklin or its officials applied the law in an arbitrary or invidiously discriminatory manner. Although equal protection challenges to state action that does not "trammel[ ] fun-

---

**8.** On remand, the district court will have to determine whether the initial rent increase application was valid. If the initial rent increase application was not valid, then there was no deprivation, and therefore Sierra Lake would be entitled only to nominal damages. *See Zinermon*, 110 S.Ct. at 983.

**9.** Sections 2.46.200A & B of Ordinance 529 could be construed to permit only a passing through of costs without allowance for a reason-

able profit. On remand, the district court should determine whether Ordinance 529 in fact allows a reasonable return on investment.

**10.** The principle of "fair and reasonable return on investment" may support a takings claim as well as a substantive due process claim. *See Mountain Water Co. v. Montana Dep't of Public Serv. Regulation*, 919 F.2d 593, 600 (9th Cir. 1990) (citing *Duquesne Light Co. v. Barasch*, 488 U.S. 299, 109 S.Ct. 609, 102 L.Ed.2d 646 (1989)).

damental personal rights or implicate[ ] a suspect classification" receive only rational basis scrutiny, "the rational relation test will not sustain conduct by state officials that is malicious, irrational or plainly arbitrary." *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir.1990); *see also Del Monte Dunes*, 920 F.2d at 1509 (citing *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 835 & n. 4, 107 S.Ct. 3141, 3148 & n. 4, 97 L.Ed.2d 677 (1987)). In this context, plaintiff's equal protection claim is identical to its first substantive due process claim, and we reverse the district court for the same reason.[11]

### Conclusion

The district court's judgment is reversed. We remand for further proceedings consistent with this opinion.

GOODWIN, Circuit Judge, concurring.

Today we hold that the Rocklin rent control ordinance, as applied, results in a physical taking of private property. We reach this result because the law of the circuit is found in *Hall v. City of Santa Barbara*, 833 F.2d 1270 (9th Cir.1987), *cert. denied*, 485 U.S. 940, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988).

I concur under the compulsion of precedent, but for the record I want to note that I have not forgotten the difference between the physical and the metaphysical. *Hall* reached a commendable legislative result by calling a regulatory ordinance a physical taking. I am in somewhat the same position as I found myself upon first reading *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), applauding the result but disturbed by the method. Nonetheless, *stare decisis* is a proven policy, and I concur.

---

**11.** To the extent Sierra Lake raises an equal protection challenge to the enactment of Ordinance 529, such a challenge could succeed only if the ordinance served "no legitimate governmental purpose and if impermissible animus toward an unpopular group prompted the statute's enactment." *Mountain Water Co.*, 919 F.2d at 598 (citing *USDA v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973)). Thus, if the district court on remand were to find that the enactment of Ordinance 529 reflected hostility toward landlords as a group, it would be obligated to analyze the statute for legitimacy, as opposed to mere rationality.