108 F.3d 1386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Rose L. STUART, Plaintiff-Appellant,
v.
BUREAU OF INDIAN AFFAIRS, U.S. DEPARTMENT OF INTERIOR,
Defendant-Appellee.
 No. 95-35978.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 13, 1996.
Decided March 14, 1997.
 
 Before: NOONAN, THOMPSON and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Rose L. Stuart contracted to buy Indian reservation land from Wilbur and Yvonne Bigby. The land sale contract specified the Bigbys would hold title to the land until Stuart made her last installment payment. After Stuart defaulted on several installment payments, the Bureau of Indian Affairs (BIA) cancelled the contract. Stuart appealed to the Interior Board of Indian Appeals (IBIA). She argued: (1) due process required the BIA to give her an opportunity to be heard before cancelling her contract; and (2) the Secretary of the Interior violated his duties as trustee to Stuart in cancelling the contract. The IBIA affirmed the cancellation decision. Stuart's subsequent petition for review in federal district court was denied, and Stuart appealed.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 4
 * FACTS
 
 
 5
 In 1979, the Bigbys, enrolled members of a federally-recognized Indian tribe, contracted to sell 6,340 acres of trust land located on the Fort Belknap Indian Reservation to Stuart for $1.5 million. Stuart also is enrolled in a federally-recognized Indian tribe. Because the land is on an Indian reservation, it is held in trust by the United States.
 
 
 6
 Under the terms of the land sale contract, Stuart was required to pay $80,000 annually from 1980 to 1983, and $100,000 annually from 1984 to 1992. In addition, Stuart was required to make annual payments of $22,000 on the Bigbys' mortgage on the land. After twelve years, in 1992, Stuart was required to pay the Bigbys the entire remaining balance. Between 1979 and 1992, Stuart was entitled to possess the land, but the deed to the land remained with the Bigbys until Stuart made her final payment.[1]
 
 
 7
 In 1980, the Bigbys and Stuart modified their original agreement. The amended agreement allowed Stuart to begin paying her installment payments in 1981 rather than in 1980 (as provided in the 1979 contract). In 1986, the Bigbys agreed to defer $40,000 of Stuart's payments for 1985, 1986, and 1987 to the end of the contract payment period.
 
 
 8
 In 1987, Stuart failed to make full payment under the contract. The BIA wrote Stuart, informing her that she was delinquent, but Stuart still did not pay. Farm Credit Services (FCS), the mortgagee of the land, subsequently advised the Bigbys that Stuart had not made payments toward the mortgage.
 
 
 9
 In November 1989, Stuart and the Bigbys amended the contract to revise Stuart's payment schedule, reduce the purchase price of the property, and extend the final payment date of the contract to December, 2003.
 
 
 10
 When Stuart did not pay as required by the terms of the new, renegotiated contract, the Bigbys wrote her a letter notifying her that she was in default, and informing her that if she did not pay within thirty days, the Bigbys would cancel the contract.
 
 
 11
 After thirty days had expired, the BIA wrote Stuart, giving her another ten days to cure her default. Meanwhile, the attorney for FCS informed the Bigbys that, because the mortgage remained unpaid, foreclosure proceedings were imminent.
 
 
 12
 Stuart still failed to pay. On February 5, 1990, after request from the Bigbys, the BIA cancelled the contract. However, Stuart filed for bankruptcy, and the district court reinstated Stuart's contract pursuant to the prompt cure provision of 11 U.S.C. § 365(b)(1).
 
 
 13
 On December 1, 1992, Stuart failed to make a $99,000 installment payment. The Bigbys subsequently notified Stuart of her default, and the BIA wrote Stuart a letter stating that, if she failed to cure within thirty days, the Bigbys could elect to terminate the contract.[2]
 
 
 14
 In June, Stuart asked the BIA for a federal mediator, a BIA guarantee for chemical spraying, BIA payment for outside counsel representation, and copies of her title status from the BIA. On June 29, the BIA cancelled the contract, and denied all of Stuart's June requests.
 
 
 15
 Stuart filed four notices of appeal with the BIA Area Director. On September 13, the Area Director affirmed the cancellation of Stuart's contract.
 
 
 16
 Stuart then appealed to the IBIA. The IBIA issued a decision on November 2 making the Area Director's decision to cancel the contract immediately effective because of the imminence of possible foreclosure. In April 1994, the IBIA affirmed the Area Director's decision to cancel the contract.
 
 
 17
 Stuart's petition for review in federal district court was denied, and this appeal followed.
 
 II
 DISCUSSION
 A. Due Process
 
 18
 The central issue in this appeal is whether the BIA violated Stuart's due process rights when it cancelled her contract. Stuart argues: (1) the BIA regulations violate due process on their face because they do not require the BIA to hold a hearing before cancelling a contract; (2) the IBIA violated due process when it exercised its discretion under 25 C.F.R. § 2.6(a) to finalize the cancellation of Stuart's contract; and (3) the BIA violated due process when it failed to follow its own regulations.
 
 
 19
 We review de novo whether the BIA's procedures violated the due process clause. See Gilbert v. National Transp. Safety Bd., 80 F.3d 364, 367 (9th Cir.1996).
 
 1. Facial Challenge
 
 20
 In Stuart N. Douglas v. United States, No. 96-35117 (9th Cir.----), filed contemporaneously with this Memorandum Disposition, we held the BIA's procedures for the cancellation of installment land sale contracts, as codified in the relevant statute and regulations, do not violate due process on their face.
 
 
 21
 2. Exercise of Discretion Pursuant to 25 C.F.R. § 2.6(a)
 
 
 22
 Typically, while a buyer's appeal is pending, the BIA's decision to cancel a contract is not considered final, and the installment buyer retains control of the land. 25 C.F.R. § 2.6(a). However, when "the official to whom the appeal is made determines that public safety, protection of trust resources, or other public exigency requires that the decision be made effective immediately," the official can make his decision immediately effective. Id. If the BIA official makes this decision pursuant to Section 2.6(a) of the regulations, the land reverts immediately to the seller.
 
 
 23
 This type of summary cancellation "may be justified in emergency situations." Hodel v. Virginia Surface Mining and Reclamation Assoc., Inc., 452 U.S. 264, 300 (1981). A BIA official may exercise his discretion to expedite the finality of a BIA decision if public health and safety so require. See id.; see also Armendariz v. Penman, 31 F.3d 860, 866 (9th Cir.1994).
 
 
 24
 In this case, the IBIA exercised its discretion because it found immediate cancellation was required to prevent loss of the trust land in foreclosure proceedings.
 
 
 25
 Stuart disagrees with this factual finding of the IBIA. She argues the trust land was not in jeopardy of foreclosure because the FCS did not indicate its intent to begin foreclosure proceedings until January 4, 1994. The IBIA issued its decision to finalize the cancellation on November 2, 1993.
 
 
 26
 We apply the substantial evidence standard when reviewing the factual findings of an agency like the BIA. See In re Transcon Lines, 89 F.3d 559, 564 (9th Cir.1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.
 
 
 27
 Substantial evidence supports the IBIA's finding that the trust land was in jeopardy of foreclosure. The post-bankruptcy agreement between the Bigbys and Stuart was executed in the shadow of FCS's foreclosure threat. If the BIA had delayed cancelling the contract, it would have run the risk of losing the trust land before the Bigbys had time to cure the defaults or make other arrangements with FCS to avoid foreclosure. Given Stuart's persistent failure to meet her obligations over the years, the Area Director's exercise of discretion to immediately cancel Stuart's contract did not violate due process.
 
 3. BIA Regulation Violations
 
 28
 Stuart argues the BIA violated her due process rights by failing to follow its own regulations during its cancellation of her contract. According to Stuart, the BIA violated the regulations in three ways: (a) the BIA Superintendent issued a letter terminating her contract before the regulations permitted such action; (b) the BIA Area Director ruled on her appeal before receiving her statement of reasons; and (c) the BIA did not send her copies of documents she requested.
 
 
 29
 The BIA Superintendent erroneously stated in his May 27, 1993 decision notifying Stuart of her default that the notice letter itself was subject to appeal. Based on this statement, Stuart appealed the notification letter. As soon as the Superintendent recognized his error, he sent Stuart a correction letter. The correction letter corrected the error. The notice letter was not itself appealable, but the decision to terminate the contract was. Stuart appealed from that decision.
 
 
 30
 Stuart contends the BIA Area Director incorrectly ruled on her appeal before receiving her statement of reasons. Stuart filed her notice of appeal from the cancellation decision on July 27, 1993. 25 C.F.R. § 2.10(c) provides that, if the appellant does not file a statement of reasons for the appeal with her notice of appeal, she must file it separately within 30 days after she filed her notice of appeal. By August 26, 1993, Stuart had not filed her statement of reasons. The Area Director did not violate BIA regulations in denying her appeal.
 
 
 31
 Stuart finally contends the BIA did not render assistance to her as required by 25 C.F.R. § 2.9(b) because it did not send her copies of certain documents.[3] The record indicates, however, that the BIA sent Stuart the materials she requested.
 
 
 32
 We conclude the BIA did not violate its regulations.
 
 B. Trust Obligation
 
 33
 The BIA did not violate any trust obligation. When it cancelled Stuart's contract, and when it processed her appeal from that cancellation, it acted pursuant to its rights and duties under the relevant statute and regulations, rights and duties which were neither proscribed nor limited by the contract. Douglas N. Stuart v. United States, No. 96-35117 (9th Cir.----); cf. Oglala Sioux Tribe of Indians v. Andrus, 603 F.2d 707, 721 (8th Cir.1979) (holding that the BIA violated its trust obligation when it failed to comply with its own regulations).
 
 
 34
 Nor did the BIA violate its trust obligation when it approved the Bigbys' land sale price, a price Stuart argues was higher than the appraised value of the land. Stuart did not pay significantly more than the appraised value.
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The 1979 agreement contained the following default provision:
 In the event of a default in payment, Sellers will give Buyer notice in writing of the delinquent payment, and Buyer will have thirty days from such notice in which to correct the default. Should Buyer fail to correct the default within the time allowed, the contract will terminate and Sellers may repossess the lands.
 
 
 [2]
 The letter erroneously informed Stuart that she could appeal the notice letter to the BIA Area Director. The BIA subsequently wrote Stuart a letter clarifying its error
 
 
 [3]
 25 C.F.R. § 2.9(b) provides, in pertinent part:
 When the appellant is an Indian or Indian tribe not represented by counsel, the official who issued the decision shall, upon request of the appellant, render such assistance as is appropriate in the preparation of the appeal.